**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **BASIC RESEARCH, L.L.C.** | |
| Plaintiff, | **MEMORANDUM DECISION** |
| v. | **AND ORDER** |
| **RAINBOW MEDIA HOLDINGS, INC.;** | |
| **RAINBOW ADVERTISING SALES** | Case No. 2:08CV661DAK |
| **CORPORATION,** | Consolidated Case 2:10CV631DAK |
| Defendant. | |

This matter is before the court on Plaintiff Basic Research, L.L.C.'s ("Basic") Motion for Summary Judgment, Consolidated Plaintiffs American Movie Classics Company, LLC, WE Women's Entertainment LLC's ("the Networks") Motion for Summary Judgment, Basic's Motion to Strike Consolidated Plaintiff's Motion for Summary Judgment or Motion to Stay, Defendants Rainbow Media Holdings, Inc. and Rainbow Advertising Sales Corporation's (collectively, "Rainbow") Motion to Join or Substitute Real Parties in Interest, and Basic's Motion to Strike Testimony of Mel Carll.

This case is in a very unusual procedural posture because Judge Campbell, prior to her recusal, held a hearing on Basic's Motion for Summary Judgment, Basic's Motion to Strike Consolidated Plaintiff's Motion for Summary Judgment, and Rainbow's Motion to Join or Substitute Real Parties in Interest. This court has a transcript of the prior hearing and has reviewed it. At that hearing, Judge Campbell ruled that there was no need to substitute parties

because the cases were consolidated. She also stated, "I'm going to deny the motion to strike the Network's filings." She then took Basic's motion for summary judgment under advisement and directed the parties to fully brief the Network's Motion for Summary Judgment. Therefore, although the minute entry for the hearing did not reflect the ruling and thus the court's docket did not reflect her ruling, the motions have been ruled on and this court agrees with the rulings. Accordingly, Basic's Motion to Strike Consolidated Plaintiff's Motion for Summary Judgment is denied, and Rainbow's Motion to Join or Substitute Real Parties in Interest is moot due to the consolidation of the cases.

On June 23, 2011, this court held a hearing on the motions for summary judgment and Basic's Motion to Strike the Testimony of Mel Carll. At the hearing, Basic was represented by David Parkinson and Alan Dunaway, and Rainbow and the Networks were represented by Raymond J. Etcheverry and Zack L. Winzeler. The court took the motions under advisements. After carefully considering the arguments advanced by the parties, the materials submitted by the parties, and the law and facts relevant to the motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

This case involves a dispute over who is responsible for the payment of Basic Research advertising that ran on the Networks owned by Rainbow from January to March 2008. To advertise its products, Basic used an advertising agency named Icebox. Basic paid Icebox up front for all of its advertising. Icebox, however, went into bankruptcy and it was discovered that Icebox had not paid Rainbow's Networks for three months worth of Basic advertising. The advertising was worth $590,000.

When Icebox filed bankruptcy, Rainbow contacted Basic to be paid. Basic then filed this

action requesting a declaration that Icebox, not it, was responsible for paying for the advertisements. After Rainbow was served with the Complaint, Basic's counsel asked Rainbow's counsel if he wanted to stay the case while the Networks made claims for payment in Icebox's bankruptcy. Rainbow's counsel stated that he did not want a stay and he preferred to pursue both avenues for payment. The case was never stayed, but the Icebox bankruptcy has concluded.

In the bankruptcy action, the Networks obtained approximately $132,000 in payment from the Icebox bankruptcy estate. Because that amount is an offset to the original amount due, Rainbow now seeks the remaining $406,000 from Basic. Basic argues that the payment the Networks obtained through the bankruptcy was Rainbow's only remedy, and Rainbow asserts that it can proceed against both the agent and the principal for the amount due.

Because Basic disputed whether Rainbow could assert claims on behalf of the Networks, Rainbow filed a second action in which the Networks collectively sued Basic for payment. Rainbow also submitted a declaration explaining its corporate structure and relationship with the Networks and establishing that it owns and controls the Networks. The second action was subsequently consolidated into this action. As stated above, that consolidation mooted a motion to substitute the Networks as the real parties in interest.

The disputes regarding liability for the payment of the advertising focus on the agency relationship between Basic and its former advertising agency, Icebox, the relationship between Icebox and the Networks, and the relationship between Basic and Rainbow. The parties agree that Basic was a disclosed principal for purposes of the advertising because the Networks knew that Icebox was acting as an agent for Basic. The advertising was for Basic Research products, not for Icebox, and the Networks made Basic submit a credit application when Basic and Icebox

approached them about running advertisements. In addition, all of the invoices relating to the advertisements listed Basic as the "advertiser."

The parties also agree that Basic controlled and approved almost all aspects of the advertising decisions. Icebox was authorized to place advertising on behalf of Basic, but Basic specifically authorized and approved each advertisement and its placement before Icebox placed it. Thus, Icebox had the authority to , and routinely did, purchase advertising authorized and approved by Basic.

Nonetheless, Basic contends that Icebox did not have the authority to incur debt or receive credit on its behalf. Basic prepaid Icebox through an escrow account for all of the advertising. Icebox purportedly had legal and equitable title to the funds in the escrow account. But, Icebox could not access the funds until it invoiced Basic for the advertising and Basic then approved Icebox's request for a draw from the escrow account.

In April 2003, five years prior to the advertising in question, Basic applied for credit in order to have advertising placed with Rainbow's Networks. Prior to that application, neither Basic nor PKPF (which was Icebox's name at the time) had any relationship with Rainbow. Val Weight, Basic's controller at the time, signed the Rainbow credit application and provided media references to Rainbow. Weight testified that signing credit applications for the company was his regular practice and he had completed hundreds of similar applications. The credit application authorized Rainbow to make inquiries relevant to extending credit and provided Basic with payment to be made on terms of "net 30 days."

The parties dispute whether Icebox ever obtained credit from Rainbow. Basic claims that Icebox was being granted extended time to pay Rainbow in the ninety days prior to its bankruptcy. But there is no written credit application between Icebox and Rainbow. In addition,

when Icebox changed its name and/or its corporate form from PKPF to Icebox in January 2005,

Rainbow requested a credit application from it.  In response to that request, Icebox's president

responded with an email stating, "The credit application you have should be with Basic Research,

not PKPF, therefore you don't need anything from us except an address change."  Also employees

of Icebox testified that Icebox never received credit from Rainbow.  What Basic characterizes as

a receipt of credit is Icebox's failure to make its payments for ninety days prior to filing

bankruptcy.  During that time, Rainbow was seeking payment from Icebox.

The broadcast orders that Icebox submitted on Basic's behalf to the Networks contained

the following language:  "Icebox Advertising Inc. is acting as an agent for the client/advertiser in

placing media orders.  All financial liability and responsibility shall remain with the

client/adviser.  Station shall not hold Icebox Advertising liable and/or responsible for any

financial obligations with placing orders on behalf of clients/advertisers."  Basic, however,

contends that Icebox's CEO testified in the bankruptcy proceedings that Icebox was responsible

for making the payments.  Basic also points to emails in which it appears that Rainbow instructed

employees to remove that language from orders before placing them.

Furthermore, there is also a dispute regarding a Letter of Liability allegedly signed by

Basic.  Rainbow claims that it was discovered in Basic's file and found in the regular course of

discovery.  Basic claims that the Letter of Liability is a forgery.  Basic has an expert who states

that it could be an instance where a signature was lifted from another document.  The quality of

the faxed copy, however, makes it difficult to be certain.  The parties seem to have moved away

from the dispute over this Letter in their later briefing because of the dispute as to its origin.

## DISCUSSION

Because Basic's and the Network's motions for summary judgment address the same issues, the court will analyze them together. Both parties represent that they believe summary judgment is appropriate at this stage. As an initial matter, however, the court will discuss Basic's Motion to Strike the Testimony of Mel Carll as the motion may impact the evidence the court considers with respect to the motions for summary judgment.

### Basic's Motion to Strike Testimony of Mel Carll

Basic moves to strike the testimony of Mel Carll, asserting that neither the Networks nor Rainbow disclosed Carll as a potential witness as required by Rules 26(a) and 37(c) of the Federal Rules of Civil Procedure. Rule 26(a) requires parties to disclose individuals likely to have discoverable information. *See* Fed. R. Civ. P. 26(a). The rule further requires parties to supplement Rule 26(a) disclosures. Rule 37 excludes testimony from witnesses not disclosed under Rule 26(a) to support a motion, hearing, or trial "unless the failure [to disclose] was substantially justified or was harmless." Fed. R. Civ. P. 37(c).

In *Woodworker's Supply Inc v. Principal Mutual Life Ins.*, 170 F.3d 985, 993 (10th Cir. 1999), the Tenth Circuit stated that the following factors should guide the court's exercise of discretion in determining whether a Rule 26(a) violation is justified for purposes of applying Rule 37(c): (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."

Rainbow and the Networks argue that some factual background is necessary in determining whether the submission of the declaration was justified. In support of their motion for summary judgment, the Networks submitted a January 2005 chain of emails between

Network employees and Icebox employees. The Networks cited to one portion of the email chain in which Mel Carll, Icebox's former CEO, represented to the Networks that the credit application should be with Basic Research, not Icebox.

The Networks had laid foundation for the email chain through the deposition testimony of Kathleen Kirley, the Assistant Divisional Comptroller for Cablevision Systems Corp., which is the parent company of Rainbow. Kirley testified in her deposition that the email came from the Networks' files, that it was the policy of the Networks to retain such a document, and that the email was kept in the ordinary course of the Networks' business. During Kirley's deposition, Basic did not challenge the authenticity of the email, did not object to her testimony based on lack of foundation, and did not claim that the email was inadmissible hearsay. However, in opposition to the Network's summary judgment motion, Basic argued that the email was inadmissible because it lacked authenticity and constituted hearsay. Basic argued that Kirely did not say how the document was placed in the file and did not write or receive the email. Basic stated specifically that "Rainbow has presented no testimony from the supposed author of the email [Mr. Carll] to establish that he actually sent the email, or that the text is in fact what he wrote and was not in some way manipulated."

For the sole purpose of rebutting Basic's claim that the email was inadmissible, the Networks sought declarations from Christine Lipani and Mel Carll. Lipani, an account representative in the Billing, Credit, and Collections Department of Cablevision Systems Corporation, submitted sworn testimony that she was a party to the January 2005 email, that the email was maintained in the Network files, and that the email was produced from those files in the regular course of discovery. Carll submitted sworn testimony that, while he had no specific recollection of that individual email, his statement from the email that the Networks should have

a credit application with Basic, not Icebox, was true and correct.

In considering the *Woodworker* elements, Basic first argues that it was surprised and prejudiced because Carll had never been identified in Rule 26(a) disclosures despite two and a half years of litigation. Carll's testimony was offered with the Network's reply memorandum, which gave Basic no opportunity to respond and was beyond the deposition deadline.

The Networks' introduction of the Carll testimony was only to rebut Basic's arguments that the email lacked authentication and constituted hearsay. After challenging the admissibility of the email, Basic should not have been surprised by the testimony. Moreover, Basic has not shown how it is prejudiced by the authentication of the email. Basic did not object to the authenticity or foundation for the email in Kirley's deposition. Basic was aware that Carll was the author of the email at the time of Kirley's deposition. Thus, his identity and the fact that he may have discoverable information should not have come as a surprise to Basic. Rather, Basic waited to raise its objections to the email at the summary judgment stage. The Networks responded with an appropriate declaration.

Basic has also failed to show how it is prejudiced by not being able to depose Carll. There is nothing to suggest that Carll's testimony would change. Basic calls the testimony self-serving, but Carll is not a party to this action, stands to gain nothing from his testimony, and has not worked for Icebox for five years. Basic claims that Carll's competence to testify is suspect because he left Icebox in 2006 and has no knowledge of events after his departure. But he does not testify as to any events that occurred after he left Icebox. He testifies as to the email in question.

Under the second element, Basic argues that the prejudice cannot be cured at this stage of the summary judgment phase because it has no opportunity to respond and can no longer depose

him because discovery is closed.  But even if Basic suffered some prejudice by the disclosure of Carll's testimony, Basic had ample opportunity to cure the prejudice.  Basic had the declaration for over a month before filing its Motion to Strike.  There was nothing preventing Basic from contacting Carll to question him regarding the contents of his declaration.  Basic has not claimed that he refuses to discuss the case unless under subpoena power.

Under the third factor, Basic states that although no trial disruption has been caused, the summary judgment proceedings have been.  If the case proceeded to trial, Basic contends that there would be disruption because Basic has not been allowed to depose Carll.  Under the third element, there is no disruption to any trial as a trial has not been set.  Moreover, as stated above, Basic has not alleged that Carll will not meet with them to discuss the case.

Basic acknowledges that under the fourth factor, bad faith or willfulness is difficult to determine.  Basic states that it does not pretend to know the Networks' intentions at the time they offered the testimony.  Basic has not demonstrated that the Networks have acted in bad faith or with willfulness.  The Networks authenticated and laid foundation for the email through Kirley's deposition.  Basic did not challenge it during her deposition.  Basic then attempted to challenge it for purposes of summary judgment, and the Networks sought Carll's declaration testimony to rebut Basic's assertions.  This is not the type of factual circumstance that would support a finding of bad faith or willfulness.

The court concludes that there is basis for striking Mel Carll's declaration.  An analysis of the *Woodworker* elements demonstrates that the Networks' actions were justified.  Accordingly, Basic's Motion to Strike is denied.

<u>**Motion for Summary Judgment**</u>

Three main issues are presented by the parties' motions for summary judgment: (1) whether Basic is responsible for paying the Networks for the advertising because it was a disclosed principal and Icebox was its agent; (2) whether Basic's Credit Application with Rainbow is a contract and it has been breached; and (3) whether Rainbow is entitled to payment for the advertisements under the doctrine of unjust enrichment.

**1.  Agency Principles**

Rainbow and the Networks assert that Basic is responsible for paying for the Basic Research advertising that Icebox placed with the Networks because it is undisputed that Basic was a disclosed principal and Icebox was Basic's agent for purposes of placing advertising with the Networks.  Basic argues that it is not liable because it paid Icebox for the advertising up front and Icebox was not its agent for incurring debt or credit.  Basic also argues that Rainbow and the Network's agency theory fails based on the doctrines of election of remedies and judicial estoppel.

**A.  Election of Remedies**

First, Basic claims the Networks cannot proceed against Basic for payment of the advertising when the Networks chose to pursue payment for the advertising in Icebox's bankruptcy.  The doctrine of election of remedies, however, does not apply to disclosed principals.  Thus, it has no application in this case where Icebox acted as the agent of Basic, a disclosed principal.  Consequently, Basic's claim that Rainbow and the Network's election to pursue and recover funds from Icebox bars them from proceeding against Basic is without merit.

In *Lubbock Feed Lots Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250 (5th Cir. 1980), the plaintiffs sold cattle to a man named Heller, who, in turn, sold the cattle to the defendant, an

out-of-state meat packer. *Id.* at 254-55. The meat packer paid Heller in full for the cattle, but Heller's check to the plaintiffs was dishonored. *Id.* at 255. After only being able to recover a portion of the purchase price from Heller, plaintiffs sued the meat packer to recover the balance of the purchase price for the cattle. *Id.* The lower court found that an agency relationship existed between Heller and the meat packer and ordered the meat packer to pay the balance of the purchase price for the cattle. *Id.*

The meat packer appealed, arguing, among other things, the doctrine of election of remedies--that plaintiff's initial pursuit of the full payment from Heller precluded plaintiff from recovering the balance of the purchase price from the meat packer. *Id.* at 274. The court of appeals noted that "the election of remedies rule upon which [the meat packer] relies applies only to 'undisclosed' principals." *Id.* at 274. The court stated that "suit against either the agent or his disclosed (or partially disclosed) principal is not regarded as pursuing remedies which are inconsistent with one another." *Id.* The court explained, citing to Restatement Second of Agency, that "where both the existence of the agency and the identity of the principal are known to the third party when the contract is made (disclosed agency) or where the existence of the agency alone is known (partially disclosed agency), the recovery of judgment against the agent does not constitute an election of remedies that will bar a subsequent suit against the principal." *Id.* at 274-75. Upon finding that Heller was, at least an agent for a partially disclosed principal, the court concluded that the district court properly rejected the meat packer's election of remedies defense. *Id.* at 276.

In *General Fire Protection Inc. v. Rosenberg*, 1993 WL 818905 (Mass. Super Ct. Sept. 7, 1993), the court noted that "[u]nder the doctrine, the distinctions between disclosed, partially disclosed and undisclosed principals are critical. The court found that the doctrine of election of

remedies was inapplicable in the situation of a disclosed or partially disclosed principal and the plaintiff was not prevented from pursuing a judgment against a partially disclosed principal, notwithstanding its prior judgment against Levine [the agent]." *Id.* at *2.

Several courts have held that the doctrine of election of remedies does not bar a third party's suit against a disclosed principal even after the third party has obtained a judgment against the agent. Here, Basic makes the same argument that has been rejected in all of those cases: that the Networks are estopped from pursuing judgment against Basic because the Networks sought and obtained a judgment against Icebox in the bankruptcy. But the doctrine of election of remedies does not apply here because Basic was a disclosed principal. The Networks can pursue judgment against both Icebox and Basic.

### B.  Judicial Estoppel

Next, Basic argues that Rainbow and the Networks should be judicially estopped from asserting that Basic alone was liable for the debt at issue because the Networks recovered substantial monies from the Icebox bankruptcy. Basic cites to case law stating that judicial estoppel "prevents a party from contradicting previous declarations made during the same or an earlier proceeding if the change in position would adversely affect the proceeding or constitute a fraud on the court." *Black's Law Dictionary*, (9th ed. West 2009). This quoted language, however, appears to have no application to this case. In this case, Rainbow and the Networks are not seeking a double recovery. Rather, they are seeking only the remaining amount due for the advertising. These actions do not adversely affect any proceeding or constitute a fraud on the court. As discussed above, the doctrine of election of remedies does not apply in cases involving disclosed principals. Furthermore, Basic presents no evidence that Rainbow and the Networks have ever changed their position with respect to Basic's liability for the advertising. The

evidence demonstrates that Rainbow's counsel told Basic's counsel at the outset of this litigation that Rainbow intended to pursue both avenues for payment.

The Tenth Circuit has used a three-part test to determine whether to apply judicial estoppel, stating:

> First, a party's later position must be clearly inconsistent with its earlier position. Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory. Second, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. The requirement that a previous court has accepted the prior inconsistent factual position ensures that judicial estoppel is applied in the narrowest of circumstances. Third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005) (internal quotations and citations omitted). *See also Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (discussing same three-part analysis for judicial estoppel, but noting that "there is no precise formula").

Basic's judicial estoppel defense does not meet the Tenth Circuit test. The test is similar to the language Basic quotes from Black's Law Dictionary. Under the Tenth Circuit test, Basic cannot satisfy the first element--that the position the Networks take in this action is inconsistent with the position they took in the Icebox bankruptcy. The Networks can pursue a judgment against both Icebox and Basic. In addition, Basic cannot satisfy the third element--that the Networks would derive an unfair advantage or that Basic would suffer an unfair detriment if the Networks are not estopped. The Networks have already offset the amount they received in the Icebox bankruptcy against the amount they now claim against Basic. They are, therefore, not seeking to obtain a double recovery against Basic. Basic actually received a benefit from the

Network's claim in the bankruptcy because the funds the Networks received from Icebox will offset any judgment entered against Basic in this action. Accordingly, the court concludes that Rainbow and the Networks are not judicially estopped from pursuing the remaining amount due for the advertising from Basic.

### C.  Scope of Agency

Basic further argues that there is no evidence in the record that Basic ever authorized Icebox to incur debt or credit obligations for Basic, and thus no evidence that any such acts were within the scope of the alleged agency. Basic asserts that, contrary to their position in bankruptcy, the Networks currently claim that Basic is liable on a theory of an agent binding a disclosed principal. Even assuming an agency relationship existed, however, Basic argues that it is undisputed that the scope of the relationship did not include the authority, actual or apparent, to accrue debt on Basic's behalf.

The existence of an agency relationship may not be presumed, but must be clearly demonstrated. *Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 459 (10th Cir. 1996). The party asserting the agency relationship has the burden of proving that relationship. *CIG Exploration, Inc. v. Hill*, 824 F.Supp. 1532, 1541 (D. Utah 1993) *aff'd sub nom. CIG Exploration, Inc. v. Tenneco Oil Co.*, 83 F.3d 431 (10th Cir. 1996). The party claiming an agency relationship also must prove the scope of the agent's authority. *Stone v. First Wyoming Bank N. A., Lusk*, 625 F.2d 332, 343 (10th Cir. 1980). The existence of an agency relationship is determined from all the facts and circumstances of the case. *CIG Exploration,* 824 F.Supp. at 1541.

Basic argues that the record is devoid of any evidence demonstrating that Basic

authorized Icebox to incur debt on Basic's behalf.  Rainbow and the Networks, however, assert that Basic's claim is legally and factually unavailing.

The principal-agent test simply requires a showing of the agent's authority to contract and create obligations on behalf of the principal.  *In re Dean L. Burdick Assocs., Inc.*, 19 B.R. 813 (Bankr. S.D.N.Y. 1982).  It is undisputed that Icebox had the authority to contract and create obligations on Basic's behalf.  Basic specifically authorized Icebox to place advertising on its behalf.  In fact, Basic specifically authorized and approved each advertisement before Icebox placed it.  That approval and authorization created the obligation that is at issue in this lawsuit: the obligation to pay for the advertising services provided by the Networks to Basic pursuant to its agent's authorized requests.

Basic claims that because it prepaid Icebox through an escrow account for all of the advertising, there was never a need for any credit to be extended to Basic, and Icebox never had authority to incur debt on Basic's behalf.  Evidence in the case demonstrates that while Basic paid the funds into an escrow account, and Icebox purportedly had legal and equitable title to the funds, Icebox could not access any of the funds until it invoiced Basic for the advertising and Basic approved Icebox's request for a draw from the escrow account.  Icebox, therefore, did not have access to any of the funds in the escrow account until Basic approved Icebox's request for a draw.

Basic's claim that there was no reason for credit to be extended to Basic is belied by the evidence that Basic submitted hundreds of credit applications to media companies and only Basic submitted a credit application to Rainbow.  At one point when Rainbow contacted Icebox about

submitting a credit application, Icebox responded that there was no need for a credit application from it because the credit application was with Basic.

To argue that Icebox did not have the authority to incur debt on its behalf, Basic attempts to distinguish the *Burdick* case relied on by Rainbow and the Networks. But Basic fails to address the key principle upon which the *Burdick* court based its finding of a principal-agent relationship. The *Burdick* court stated that "not only did [the principal] know with whom [the agency] had contracted, but the written agreement specified that the work done by [the agency] had to be authorized by [the principal]." 19 B.R. at 815. Likewise, here, Basic indisputably knew with whom Icebox was placing advertisements because Basic required that Icebox's orders be authorized and approved before they were placed. And, the only credit agreement was between Rainbow and Basic.

Basic further argues that *Burdick* is distinguishable from this case because the *Burdick* court found that the agent and its disclosed principal "were not engaged in a typical advertiser/advertising agency relationship." The court found the relationship atypical because the advertising agency did not receive a commission but was paid through time charges to the principal. In this case, Icebox received commissions from the Networks. Although this demonstrates a factual distinction, Basic fails to explain how this distinction is meaningful.

Basic also attempts to distinguish *Rainbow Advertising Sales Corp. v. Huntington Chevrolet, Inc.,* CEC 6076-01 (N.Y. Civ. Ct. 2002) because there was no evidence in that case that Rainbow attempted to recover from the agent first. The fact that Rainbow did not attempt to first recover from the agent in that case is immaterial. The court has determined that Basic's

election of remedies defense is inapplicable in this case because Basic was a disclosed principal. Basic also argues that the *Huntington Chevrolet* case is distinguishable because the Networks extended credit to Icebox, not Basic. However, Rainbow and the Networks assert that they never extended credit to Icebox. Basic characterizes Icebox's failure to pay the Networks for ninety days prior to its bankruptcy as Rainbow and the Networks extending credit to Icebox, but there is no evidence to support that assertion. There is no credit application between Rainbow and Icebox. And, Icebox states that they never sought credit from Rainbow or the Networks.

Basic relies on *Columbia Broadcasting System, Inc. v. Stokely Van Camp, Inc.*, 522 F.2d 369 (2d Cir. 1975), in which the court held that the "existence of an agency relationship is determined in light of the facts and circumstances of each case." *Id.* at 375. That holding, however, is consistent with the holdings of cases that find disclosed principals to be liable for the actions of its agents. On remand in that case, the district court ruled that the advertiser was not liable because of the industry standard of holding the agency liable for unpaid debts. 456 F. Supp. 539, 541 (S.D.N.Y. 1977). This case is contrary to the holdings of other cases cited by Rainbow and Basic has not presented any evidence in this case demonstrating that there is an industry standard of holding the agency liable. Such a standard would contradict the fact that it was Basic, not Icebox, that entered into the credit application with Rainbow.

At oral argument, Basic also referred to several apparent authority cases for the proposition that in order for the principal to be liable there must be evidence that the principal gave its consent to the agent. This case, however, involves actual authority. Basic gave Icebox actual authority to place advertisements on its behalf and to make payment for those advertisements. Basic does not claim that it was making the payments for the advertisements.

Rather, Basic authorized Icebox to make payments. Although Basic claims that it did not authorize Icebox to incur debt on its behalf, it is inherent in the authority granted to Icebox that Icebox was incurring debt when it placed the advertisements and then paying for the debt. Just because Icebox stopped paying for the advertisements ninety days before it filed bankruptcy does not change the nature of the authority is had from Basic.

Basic argues that by pursuing it for these debts, Rainbow is attempting to enforce credit terms to which Basic would not have assented. The evidence before the court, however, does not establish that Rainbow was extending credit. Rainbow was seeking payment and payment was not being made. When it became clear that Rainbow was not going to make the payments, Rainbow sought payment from Basic, the disclosed principal with whom Rainbow had a credit agreement. While it is regrettable that Icebox did not fulfill its obligation, it is Basic who chose to use Icebox as its agent and Basic who must be liable for the actions of its agent.

Therefore, the court concludes that, under principles of agency, Basic is liable for the remaining amount due for the Basic Research advertisements that ran on the Networks from January to March 2008. Accordingly, the court grants the Networks' motion for summary judgment and denies Basic Research's motion for summary judgment on this basis.

## B. Breach of Contract Claim

Because the court has determined that Basic is liable for the remaining amounts due for the advertising as a result of its principal-agent relationship with Icebox, the court does not need to address whether the credit application constitutes a contract or who may have breached the agreement. The court will note, however, that the credit application is a clear indication that

Basic was agreeing to pay for the advertising that ran on its behalf.[1]

## C. Unjust Enrichment Claim

Again, because the court has determined the case under agency principles, it does not need to address unjust enrichment. The court, however, believes that Basic is also liable for payment of the remaining amounts due for the advertising under the "two innocents rule," which is recognized within the claim of unjust enrichment. The fundamental elements for an unjust enrichment claim are: (1) "a benefit conferred by one person on another," (2) "the conferee must appreciate or have knowledge of the benefit," and (3) acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit under such circumstances without payment of its value. *Allen v. Hall*, 148 P.3d 939, 945 (Utah 2006).

Basic acknowledges that it received the benefit of the advertising, but it contends that, as between the Networks and Basic, the Networks should bear the loss of the unpaid advertising because the Networks could have demanded more prompt payment from Icebox. The Fifth Circuit rejected this exact argument in *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 273 (5th Cir. 1980). The *Lubbock* court analyzed the defendant's argument under

---

[1] The court also notes that Basic's repeated arguments regarding the standing of Rainbow and/or the Networks to assert certain claims, such as the breach of contract claim, are without merit. Rainbow has established in evidence its corporate structure and relationships. As the owner and operator of the networks, Rainbow has the authority to assert claims on behalf of the Networks. In this case, Rainbow has counterclaimed against Basic for the money and the Networks have asserted their own claims against Basic. The actions have been consolidated and all real parties in interest are before the court. Basic's arguments that any cause of action belongs solely to Rainbow or solely to the Networks is of no consequence. Basic merely argues both sides when it is convenient to any given argument.

the "two innocents" rule, which is "[w]here a loss must be allocated to one of two innocent parties, it should equitably fall to that party who could have, but who failed to, prevent the loss." *Id.* at 272. The court then stated that "it is [the disclosed principal] which chose to utilize [the agent] as the agency through which the purchases would be made, and as the conduit through which the price would be delivered to the sellers. And it is [the disclosed principal] which must answer for [the agent's] failure to fulfill those duties." *Id.*

In this case, the rule of two innocents is applicable. It is undisputed that Basic authorized Icebox to place the subject advertising and authorized it to make the payments after the advertisements ran. Basic and Icebox desired to run advertisements for Basic Research products with the Networks. To establish that relationship, Basic completed a credit application demonstrating its ability to pay for the advertising. Basic and Icebox established a relationship with the Networks whereby Icebox was the party actually conveying the payments to the Networks on Basic's behalf. Rainbow and the Networks worked with Icebox in good faith. As stated above, it is an unfortunate case between two innocents. But, because Basic chose to make payment through its agent, Basic should then answer for the loss occasioned by its chosen agent.

Accordingly, the court also finds that Basic is liable for payment of the remaining amounts due for the advertising under the theory of unjust enrichment. The court, therefore, grants the Networks' motion for summary judgment and denies Basic's motion for summary judgment on this claim.

## CONCLUSION

Based on the above reasoning, Plaintiff Basic Research's Motion for Summary Judgment is DENIED, Consolidated Plaintiffs American Movie Classics Company, LLC, WE Women's Entertainment LLC's Motion for Summary Judgment is GRANTED, Basic's Motion to Strike Consolidated Plaintiff's Motion for Summary Judgment or Motion to Stay was DENIED by Judge Campbell at her November 22, 2010 hearing, Defendants Rainbow Media Holdings, Inc. and Rainbow Advertising Sales Corporation's Motion to Join or Substitute Real Parties in Interest was determined to be MOOT by Judge Campbell at her November 22, 2010 hearing, and Basic's Motion to Strike Testimony of Mel Carll is DENIED. Because this ruling disposes of all the claims in this action, the Clerk of Court is directed to the close the case. The Clerk of Court is directed to enter Judgment in favor of Rainbow and the Networks in the amount of $406,528.18.

DATED this 5th day of July, 2011.

BY THE COURT

DALE A. KIMBALL

United States District Judge